Good morning, your honors. May it please the court. I'm Adam Pines of Manatee, Phelps & Phillips for the appellant Del Taco LLC. And just a quick snapshot of the background. In 1993, Del Taco went through a bankruptcy reorganization in which all of its prepetition debts were discharged. The note we're talking about was issued three years before that. So the question in this case is whether that was a known or unknown debt of Del Taco at the time of the reorganization. Was Mr. Soliman deposed at all? Yes, your honor. Was he asked whether or not he had any awareness of the bankruptcy proceeding? He says he did not. Had no idea. That's right. Now, Mr. Soliman is a very sophisticated party. He had come out of W.R. Grace. He'd been in the restaurant business for decades. He was living in Orange County where Del Taco was based. At the time of this bankruptcy filing, it was the biggest filing in Orange County bankruptcy history, Del Taco's filing. And we would submit that Mr. Soliman could not possibly have not known about it. But we would also concede that that probably doesn't matter to this case. The Ninth Circuit's opinion in the Maya construction case establishes pretty clearly that a known creditor is required to receive formal notice of the bankruptcy proceeding, meaning mailed notice of the claims bar date. On the other hand, an unknown creditor, which is a creditor whose identity is not disclosed in a reasonable search of the debtor's books and records, receives constitutionally adequate notice by publication. And what this allows is basically for a company like Del Taco to go through all of its records and identify all of its potential creditors. In this case, that search revealed the identity of 28,000 potential creditors. With the advice of the counsel, about 10,000 of those creditors received notice by mail. And Mr. Soliman did not receive notice by mail because there was nothing in Del Taco's books and records at the time to indicate there was a debt outstanding to him. Counsel, I have a question for you. Yes. I'm not an accounting expert, but it seems odd to me that someone could, that a company could have like a $2 million note obligation, even when it's contingent or conditional in some respects, and not have a record of that in their internal accounting records or in whatever records would go, you know, to a CPA. So could you address that? Yes, of course, Your Honor. And that, frankly, is what counsel and I have been litigating now for a couple of years. It is surprising, but you have to understand the background, which is Mr. Soliman bought Del Taco in a leveraged buyout, where he borrowed $115 million from GE Capital to make the purchase. And after that, the company lost tens of millions of dollars in the next couple of years, to the point where GE Capital exercised its rights as a secured creditor, which was not being paid on its loan, and essentially negotiated Mr. Soliman's departure. But at that time, GE Capital was owed something in the range of $150 million, and that debt was increasing by more than $10 million a year. The note that GE Capital had Del Taco issue to Mr. Soliman says, it will only be payable if GE Capital is paid in full on this outstanding debt. And what Mr. Fox, Harold Fox was also a payee on the note, became Del Taco's chief financial officer, and is literally the person who made the decision not to record this. What he knew was there was absolutely no possibility that Del Taco was ever going to be able to pay off that debt. That based on the revenues of the company, its possible expansion, and the possible future events, there was zero probability that Del Taco was ever going to be able to service the GE Capital debt, much less pay it off. And that proved true. Over the next few years, the debt grew to $170 million by 1990, and then by the time of the bankruptcy filing, the debt is in the range of $225 million. That's why Mr. Fox didn't record it. And the reason we're here today, of course, is that the note was not on the list of the company's debts and was not discharged as the bankruptcy court found. And Mr. Soliman now has tried to create or has tried to advance arguments about why the note is due. We're in the Superior Court right now, facing a December 14 trial date, where obviously we plan to prove that the note is not due, because one of the conditions for payment is that all of this 1988 debt and a debt advanced by GE Capital have been satisfied and full and all preferred stock redeemed. We have good defenses to that. $150 million in preferred stock was canceled in the bankruptcy case, will never be redeemed. And, of course, this is why the note will never be due in the separate Superior Court case. But without that cancellation of preferred stock that happened in the bankruptcy court, Del Taco would have been liquidated. And, of course, we also know from the terms of the note that in any liquidation or bankruptcy proceeding, GE Capital had the right to – it's a subordinated note. But GE Capital had the right to take over the – Soliman's interest in the note and to collect any funds that might be paid under the note in the bankruptcy case. So if GE Capital had – I'm sorry. If Mr. Soliman had been given notice that he had submitted a proof of claim in the bankruptcy court, if he'd even told anyone in the bankruptcy court that this – he claimed this debt was still outstanding,  is that GE Capital would have included the note in his proof of claim and the note would have been basically wiped out, because GE Capital received what was left at the end of the bankruptcy case after the other creditors were paid. Now, we also know why Mr. Soliman was an unknown creditor at the time of the bankruptcy case, which is the GE Capital individuals who negotiated his departure were loan people. They came in to get Del Taco straightened out, to bring in new management, and they were there like workout specialists are for a short period of time. They negotiated Mr. Soliman's departure. I hear what you're – I hear what you're arguing. But while they were there, they are, in effect, the eyes and ears of the corporation. And under simple principles of agency, don't we attribute to the corporation knowledge of these agents however briefly they serve? In general, that's true while the agents were there. But what happened was they were there for a few months. They brought in Kevin Moriarty to take over the corporation, and they never told him that this note had been issued. But the bankruptcy court made an express finding of fact that those, I'll call them workout specialists, were not reasonably diligent in looking through the records or files that may have been in Mr. Fox's former office so that the corporation couldn't say that they had been reasonably diligent in looking in places they should have been looking for this note. We're talking about two different workouts, two different reorganizations. Oh, I'm sorry. I misunderstood. Say, Counsel, I should probably know the answer to this from the record, but can you remind me, please? Did Del Taco have public auditors? Yes, sir. Like, did they have CPAs? Yes, Arthur Anderson served as the company's auditors and accountants from at least 1988 through 1993, the whole period we're talking about. And those accountants, I take it, they had no record of this note. Is that right? That's correct, Your Honor. That's correct. Mr. Fox testified that he was not aware of anyone ever communicating that to them, and he testified that he never told the Arthur Anderson accountants that the note had been issued. To come back to Judge Tallman's question, in 1990, when Mr. Solomon was basically bought out, and he received $2 million at the time he and his group were bought out, the GE capital people who came in were Steve Reed, Steve Green, and I think Dwight Carey is the name. And what happened, maybe William Carey, they brought in new management, didn't tell that new management about the note, and then went back to Connecticut where they're based. Mr. Moriarty came in, ran the company for the next three years, working with different GE capital people, the performing loan people, and eventually came to the conclusion that because of mainly, actually, old leases that were above market, that the company had to go through a restructuring. When that restructuring happened in 1993, Mr. Moriarty wasn't aware of the note. Mr. Fox had left the company earlier in 1993, and the GE capital people working on the bankruptcy restructuring were different from the ones who had dealt with the company in 1990 and didn't know about this debt. That's Peter Kenoy, Paul Street, and Mr. Flannery. They all testified. I think I'm with you in terms of sort of the chain of management and why this thing fell through the crack. But the one thing missing from your explanation, which the bankruptcy court found significant, was that nobody ever looked through Mr. Fox's old file. And again, that's a misperception. Well, that's a factual finding by the bankruptcy court. What do I do with it? You call it a misperception. If it's clearly erroneous, how can you establish that to our satisfaction so we can overturn it on appeal? It is clearly erroneous. Why is it clearly erroneous? Because the CFO or the next person who moved into Mr. Fox's office, to get the timing straight, Mr. Fox left Del Taco in January of 1993, and Greg Siegel came into Del Taco, I believe the beginning of March 1993, to be the new CFO and also a workout specialist. Mr. Fox said in his deposition, I left a copy of the note in the CFO's office when I left the company. And he admitted he never told anyone it was there. Mr. Siegel moved into that office a month and a half later and testified, and this is in the record, I don't recall whether there were documents in the office, but if there had been, I would have reviewed them. But that's not the same as saying that I did review them and I didn't find it. That's the problem with that. I would submit it is. The testimony is ambiguous, is it not? I don't recall, but my habit would have been that if there were documents there, I would have looked. That's not the same as saying I reviewed whatever I found in the office, but I didn't see any note. But that's not what Mr. Siegel said. I think it is. I would suggest that the court take a look at that particular page in the record. I've read it, and I do not read that as an affirmative declaration that I looked and I didn't find it. That's the problem I'm having. And if your argument is that in the bankruptcy court's factual finding that there was not reasonable diligence because nobody looked, I don't know how we can declare on appeal that that's clearly erroneous, given the ambiguity in Siegel's deposition testimony. Well, this is a summary judgment case where the court does not make findings of fact, at least not where the facts are controverted. Well, but the bankruptcy court is saying Mr. Siegel can't controvert the facts because he cannot say I affirmatively looked and I didn't find. Had he said that, then there would be a contested issue of material fact. Fox says he left it. Siegel said I looked and I didn't find it. But that's not the state of the record, counsel. Mr. Siegel and Peter Salomon, who was the controller for the company, both testified that they reviewed all of the documents in the accounting department to see if there were any records that had not been identified. But the testimony from Fox is he left the note in the files of his office. So we don't know whether or not Fox's files got moved to the accounting department, do we? No, Fox's, the accounting department includes the chief financial officer's files. Okay, but we don't have anybody who testified that we took all the documents out of Mr. Fox's office and we intermingled them with the other documents kept in the accounting department. Well, this, of course, brings us to the latches problem. We are dealing with this 15 years after the fact and 10 years after Mr. Salomon admittedly knew there was a bankruptcy filing, knew that he had a potential claim in that case and that he had not been given notice. Because of his delay in bringing this to Del Taco's attention, yes, it has been extremely difficult to prove a negative some 15 years after the fact. I can fully confess that we have not been able to prove as an absolute certainty that the note wasn't there. But that's why we have this requirement that creditors like Mr. Salomon and Mr.  if they have the intention of the court, that they bring an action when Del Taco told them in 1989 that, 1999, that the note had been discharged from the company's bankruptcy. It was incumbent on Mr. Salomon at that time to go to court. And we know from some of the correspondence that at that time there were people who had better recollections of this. We know from the letters exchanged between Del Taco and GE Capital. And I do want to, I don't want to cut you off. Well, no. I'm looking at the clock here. You've run down. So why don't you end on that. Go ahead and finish your statement, but I'm going to have to cut you off and then I'll give you a couple of minutes on rebuttal. I appreciate that. What the law requires is that the debtor do a reasonable search of its existing books and records. The undisputed facts, including Mr. Salomon's admission are that Del Taco did just that. Mr. Salomon was an unknown creditor because of that and got noticed by the publication. Thank you. Thank you. Good morning. May it please the Court. My name is Joel Israel. I'm counsel for Mr. Salomon, the appellee in this matter. I want to address both the legal and the factual points that opposing counsel raised. I do want to address a few small issues before we get started to address a few possible concerns. One of those, Judge Tallman, your first question about Mr. Salomon's knowledge. During this 1993 period, he was out of the quick service food business. He was traveling back and forth between here and New York. And late in 1993, he suffered a near catastrophic injury. He was in a coma for a few months. He was out of business for a while. Again, that wasn't at the beginning of the bankruptcy period. It was at some point during the bankruptcy period. It's not the law, but just from a practical standpoint, that's a logical question for the Court to ask. I want to focus now, from a factual standpoint, on the several ways in which Del Taco both knew about and should have known about the note to make these points clear. First of all, with regards to Mr. Fox, Judge Tallman, you're correct that it is undisputed, and the bankruptcy courts read through this testimony seven, eight times, and noted that there is no question that Mr. Fox left behind this note in his permanent files in his office. There also is no question that nobody from Del Taco testified that they reviewed the subordinated note. Mr. Salomon, the controller at the time, he just said he reviewed documents in the accounting area. He did not say he reviewed. I think you said Salomon. Siegel? You mean? Salomon. Peter Salomon was the controller. Salomon, okay. He just said he was tasked with reviewing the files in the accounting area. He did not say he reviewed the CFO's files. He did not say the CFO's office was in the accounting area. That's an argument that counsel has made. Mr. Siegel, as the Court noted, simply said, I don't recall whether there were or weren't any documents in his office. So it's undisputed that Mr. Fox, who was the CFO of Del Taco for the five years prior to its bankruptcy and then left just two months before the bankruptcy filing, left the files in his office. He was never contacted and asked any questions. We don't know. There is no testimony that his files were ever reviewed. Secondly, with regards to GE Capital, I think opposing counsel misspoke in terms of workout specialists. There was Mr. Siegel, who was a workout specialist, and with Del Taco in 1993. But GE Capital's involvement in Del Taco began in 1988 and continued through the bankruptcy and into early 1994. Now, in 1990, when Mr. Solomon sold the company, GE Capital took over Del Taco's board of directors, and they held that control up through the bankruptcy period, and then they became the owner of Del Taco in early 1993, before the bankruptcy filing. After the bankruptcy, they sold the company, and they were out other than the loan that Del Taco still owed them. Now, the individuals who negotiated, executed, and then distributed the note at Del Taco's corporate headquarters were all members of Del Taco's board of directors and GE Capital's executives. The individual who distributed the note, William Carey, he distributed the note as part of the 1990 sale agreement by which Mr. Solomon relinquished control of Del Taco. So he distributed the 1990 agreement and the subordinated note to Del Taco's corporate headquarters. There's testimony to that effect. William Carey left Del Taco in roughly March 1, 1993, just three weeks before the bankruptcy filing. The attorney who drafted the subordinated note, Dwight Carey, he was a GE Capital attorney. He was involved in drafting the agreement by which Mr. Solomon left Del Taco, and he drafted the note. He worked on the bankruptcy on GE Capital's behalf. He wasn't the main lawyer in the bankruptcy proceeding, but we produced timesheets to the bankruptcy court that showed on at least, I believe, six, seven occasions, Dwight Carey was involved in the bankruptcy proceedings, who drafted the note himself. So we have two big facts here. Both Mr. Fox and GE Capital. And again, GE Capital is a mammoth corporation. There's no question. But the individuals who were working with Del Taco in the 1988 to 1993 time period was very limited. We're talking about eight to ten executives out of one department that was in Northern California. And so this wasn't going up the GE Capital corporate chain and coming back down. This wasn't hundreds of employees. This was just a handful. And under the agency principles, which are clearly enunciated, clearly the knowledge of these three individuals, one of whom stayed with Del Taco until early March of 1993, had knowledge of the note. It wasn't just a case that Del Taco should have known about the note.  Now, from a legal standpoint, just as it did on the district court level, Del Taco's trying to convince this Court that Mr. Solomon and myself really tricked the bankruptcy court into applying the wrong standard, that the standard should simply focus on what did the debtor do in preparing for the bankruptcy, and not was the note itself reasonably ascertainable. Well, you don't dispute that had you received actual notice and had you filed a claim as an unsecured creditor, your note would have been wiped out in the bankruptcy? No, actually we do dispute that, Your Honor, for two reasons. One, Peter Kenoy was a GE Capital executive who was deposed in this case. And there was a provision in the note that provided that GE Capital had the right, but not the obligation, to include the note within its proof of claim. When Mr. Kenoy was deposed, he was asked, would you have included the note? His answer was, I don't know. It is hard for me to go back 15 years. I would have spoken with GE Capital's lawyers. I can't tell you what I would have done. And so GE Capital, by their own admission, there's no guarantee that they would have done that. Now, the second point is Kevin Moriarty, Del Taco's CEO during the time of the bankruptcy, he was also deposed in this case. And he was asked about the creditors during the bankruptcy, not just GE Capital. He said all creditors except for one were paid 100 cents on the dollar. Obviously, GE Capital, their loan was restructured. Their shares of preferred stock were reissued, which our argument is they came due in 2006, which is why we're in state court litigating this. And so we cannot know. Mr. Solomon would have been one of the third or fourth largest creditors of Del Taco at the time of its bankruptcy. He would have been on the creditors committee. He would have certainly had involvement. It's impossible to say now what would have happened because GE Capital, by its own admission, they don't know what they would have done. This was a significant part of the sale of Del Taco in 1990. Del Taco disagrees now. But for Mr. Solomon and his partners, this was a significant part of the consideration they received when they sold the company. Counsel, I have a question for you along the lines of what I asked your opposing counsel. That is, do you agree that the auditors didn't know anything about this note? Well, the testimony we have on that, Judge Gould, is that Harold Fox, the CEO, he doesn't recall providing them a copy of the note. Peter Solomon does not. The controller does not recall providing them a copy of the note. And so we don't have any testimony from the auditors themselves. But, you know, we can't dispute that because there's no evidence. Is there any development in the case about whether under generally accepted accounting principles, this type of note should have been footnoted or mentioned in a statement? Yes. Thank you for asking that. Harold Fox had 30 years dealing with GAAP and dealing with accounting principles, including the Federal Accounting Standards Board, FASB, as it's known. And under FASB 5, Mr. Fox testified that he reviewed the note. He considered FASB 5, which says if a debt is not likely to become due, then you don't include it in your financial statements. So Mr. Fox looked at that. Again, having 20 to 30 years of experience dealing with that provision, he determined the note should not have been included within Del Taco's accounting statements at that time. And he testified if it became more likely to be due, then it would be. But at that time, it was not. He didn't say there was no chance the note would ever become due. He said it was very, very unlikely back in 1990. And that's true. I mean, look, we're arguing that it became due in 2006. That's 16 years later. That's obviously a long time. And certainly in 1990, it didn't look likely. Del Taco was in a lot of debt. They just doubled the size of the company. It was going to take a while for the fortunes to improve. When Fox left the company, I understand he relinquished all claims. Did that include any claim he had on this note? Yes, Judge Penner, it did. And he actually testified that he doesn't have any claim on the note when he left in January of 1993. So there's no question about credibility on that score from the standpoint of Fox's testimony in this case. Del Taco argued in this case that Mr. Fox was hiding the ball or trying to withhold the note. He had no incentive to do so. Again, he got a payout when he left in January of 1993. There's no testimony that he held the ball or anything. In his own testimony, he knew that the board of directors knew about the note in 1990. They negotiated it. They executed it. They distributed it. So there was no question to him that he wasn't the only one with Del Taco who had knowledge of the note. If I can address the Lash's argument, I think it bears noting, and the bankruptcy court did consider this on both sides, it's undisputed that Mr. Solomon in late 1998 became aware of the note. It's also undisputed that Del Taco proper does not dispute that at least in 1998 they became aware of the note. They also had the right to discharge it. And we actually argued for Lash's with the bankruptcy court as well because they had the right to discharge the note starting in 1998. Now, what's important about that is as of 1998, again, the note was still eight years from becoming due. Mr. Solomon didn't know at that time if it was going to become due. To have gone through this lengthy process that ended up putting us right here would have been very difficult for a creditor to undertake, especially when he had no guarantee the note would ever become due. Del Taco had the equal right to discharge the note no later than 1998. It did not do so. And so to the extent Del Taco argues we're trying to disprove a negative, people don't have recollections, well, that works on the other side too. People don't have recollections that may have known about the note, that may have reviewed the note. Del Taco admitted to discovery responses in this case that it doesn't know all of its employees who reviewed the 1990 agreement or the prior ownership sale documents of the company. So there may very well have been more who knew about the note, who knew about this 1990 agreement. And Mr. Solomon certainly is prejudiced by that equally. Again, beyond just Harold Fox and beyond the three executives who we know negotiated, executed, and distributed the note. On the legal standard, if I could again, Del Taco is arguing about it's not reasonable ascertainability as to the debt itself. It's did the corporate debtor do this vague kind of general search for creditors, and I didn't dispute on the district court level and don't dispute now. They certainly did a lot of work in trying to find debtors. Just like in the N. Ray Thompson McKinnon case where they found 4,800 debtors, a lot of work was done. But in the N. Ray Thompson McKinnon case, a certain subset of customers did not have their transactions reviewed, and therefore they were held to be known, even though in spite of all the other work the debtor did. Just like in this case, Del Taco didn't review its CFO's files who left the company two years prior, two months prior to the bankruptcy. They didn't review the owner's files. They didn't review the files of the attorney who drafted the note. All those things could have been done. Now, if Del Taco's formulation was correct, you take a look at something like the seminal Hemtron case in the Third Circuit, and if they're saying that it's just a general search for creditors, if they did that, if it was reasonable, then the creditors are either discharged or not discharged. Well, what would have happened in Hemtron if the debtor in that case, if the court had focused on the debtor's work, the debtor had not done a lot of work? Let's say they were negligent. They didn't review half the files of the company. Does that mean these people who visited houses 9,000 feet from this corporate debtor 23 years before the bankruptcy filing would have been known creditors entitled to notice because the debtor was negligent? It has to work both ways. If you're willing to give a discharge when the debtor claims that they did a reasonable amount of work, you have to not give them a discharge when they don't do a reasonable amount of work. Obviously, that's not the standard because these homeowners who are 9,000 feet away, they weren't entitled to notice. The one-time purchaser of plastic cutlery in the Envirodyne case, they were not entitled to notice. You have to look at the standard courts actually apply. They look to the debt. They look to whether it was reasonably ascertainable. They don't just ask, well, did the debtor do enough? Did they do a generally reasonable search? You focus on how it could have been found. The note here, again, just three years prior to the bankruptcy, a multimillion-dollar debt given to the immediate former owner, CEO, and president of the company, as well as his partners. We contend both on the facts that show that the debt was known and based on the fact that it should have been known, that there should not be a reason for this Court to disagree with both the Bankruptcy Court and the District Court in denying Del Taco's claim for a discharge. Thank you very much, Mr. Goodman. Mr. Pines, I'll give you a couple minutes on rebuttal. Thank you, Your Honor. I appreciate that. We were talking a minute ago about what incentives people would have to do things. I think it's also important to keep in mind that Del Taco and GE Capital would have no incentive to leave off any creditor that they were aware of. The debtor's only incentive in bankruptcy is to list everyone under the sun so that you get the complete discharge. And the problem with Mr. Solomon's approach, which the Bankruptcy Court adopted, is that it would effectively prevent any debtor from getting the fresh start that the Bankruptcy Code envisions. In any case, a creditor who did not receive mailed notice can always come into court and throw out a laundry list of reasons why the debt should have been identified, a series of possible avenues of investigation that might have identified that debt. If you have a standard, which you do, of requiring the debtor to conduct a reasonable search for creditors, a reasonable search of his own books and records, that presumes that sometimes debts will not be identified. And that's why there's also publication of notice. That's why the publication serves the constitutional due process standard and gives notice to those people who don't get the mailed notice. But the requirement has to be from the perspective of the debtor at the time of the bankruptcy, not an after-the-fact view with hindsight. Does this case boil down then to whether there's a fact issue on whether the search was reasonably diligent? We would submit that that's not a disputed question, that the volume of evidence that Del Taco submitted in support of his summary judgment motion was included to show that the search was extensive and reasonable as a matter of law. But the point that Judge Tallman earlier raised, I thought, was that there wasn't evidence that Fox's files had been searched, that Siegel said he didn't recall. Yes, Your Honor. We would submit that there is a triable issue of fact as to what happened to those files, and the bankruptcy court exceeded its jurisdiction in ruling on that on summary judgment. So your position is there is a disputed issue? Yes, Your Honor. Based on the way you read the record? Yes, including having sat through Mr. Siegel's deposition and seen his demeanor when he provided that evidence, which the bankruptcy court didn't have the benefit of, but which it will in a trial. But you would agree that the bankruptcy court must have found that there was not a reasonable search, or they would have found this note. I would agree that that's what the bankruptcy court purported to find, but it did so with... Wasn't there evidence from which they could find that? That the search was unreasonable? Yes. I would submit that viewing the case from the perspective of the debtor at the time of the bankruptcy, which is having retained a workout specialist, having hired Morgan Lewis to be their bankruptcy lawyers, and going through the testimony from Kevin Warren was the lawyers got everything in triplicate, but they turned the place upside down, that the search was reasonable as a matter of law. Well, maybe they felt the same as Mr. Solomon, that it might never be paid and didn't have to list it, because they certainly knew about it, didn't they? No, no. The undisputed testimony was that the people involved in the bankruptcy case, at least the people who were in Del Taco's office, the lawyers, the people at GE Capital, and the people at Arthur Anderson, had no idea this note had been issued. But the people who had issued it three years before had left the scene. But what about the lawyer for Del Taco who was involved in the bankruptcy who had actually drafted the note? There was no lawyer for Del Taco who drafted the note. Remember, the note was drafted at a time when GE Capital had taken over Del Taco. It was GE Capital's outside attorney who drafted the note. But didn't I hear Mr. Israel say that there was a lawyer who was involved in the bankruptcy who had drafted the note? Is that who he was referring to, the GE Capital attorney? The person's name is Dwight Carey. He was a lawyer at Murphy, Deere, and Butler in San Francisco. Which was GE's counsel, correct? Right. GE had a Menlo Park office that did this takeover. They threw Mr. Solomon and his partners out, to be colloquial. That attorney in the San Francisco office had no involvement in the bankruptcy where GE was represented by the Los Angeles office of Murphy, Deere, and Butler. Same firm but different lawyers. Right. And for conference purposes, we may view a firm as one entity. I now understand your clarification. But it's different when it's different offices. Mr. Pines, I've let you run well over. Thank you both for your arguments. We have it, I think, well in mind. The case just argued is submitted, and we'll get an answer to you as soon as we can.
judges: Gould, Tallman, Panner